Entered on Docket
June 26, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: June 25, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 10-40503-EDJ
                                         Chapter 13
VICKI TRAN,

              Debtor./

In re                                    No. 10-41032-EDJ
                                         Chapter 13
LORNA BENNETT,

              Debtor./

## DECISION

Martha Bronitsky, chapter 13 Trustee (the "Trustee"), has objected to the chapter 13 plan filed by Vicki Tran, one of the above debtors ("Tran"), and has also requested dismissal of Tran's chapter 13 case. The Trustee has also objected to the chapter 13 plan filed by Lorna Bennett ("Bennett"), but has not requested dismissal. Because the Trustee's objections raise a legal issue common to both of these unrelated chapter 13 cases, the court will address the Trustee's objections in a single opinion, but issue separate orders.

/////

Decision

The court will dismiss Tran's chapter 13 case on the ground that it was not filed in good faith. The court will overrule the Trustee's objection to Bennett's chapter 13 plan, but declines to confirm the plan in its present form.

A. <u>Background - Tran</u>

The facts relevant to Tran's chapter 13 case are undisputed. On March 3, 2009, Tran filed a chapter 7 petition herein, and in due course, received her general discharge on June 2, 2009. On January 17, 2010, less than four years later, Tran filed a chapter 13 petition herein. In her bankruptcy schedules, Tran listed no general unsecured claims and no priority unsecured claims.

At the date of the chapter 13 petition, Tran owned a residence in Newark, California (the "Tran Residence") that she valued at $434,000. The Tran Residence was then subject to a first deed of trust in favor of Washington Mutual Bank ("WAMU") to secure a debt in the sum of $459,991, and a second deed of trust in favor of WAMU to secure a debt in the sum of $80,900. Thus, at the petition date, the first deed of trust was undersecured by $25,991 and the second deed of trust was wholly unsecured.

At that date, Tran also owned another parcel of real property in San Jose, California that was overencumbered, and a motor vehicle worth some $13,000 subject to a security interest that secured a debt in the sum of $6,000.

Tran's proposed chapter 13 plan provides for 60 monthly payments to the Trustee in the sum of $375. The payments will be applied to cure two delinquent mortgage payments and pay real

Decision  2

property taxes on the Tran Residence, and to pay the Trustee's fees and fees for Tran's counsel. Tran will surrender the San Jose property. The plan also provides that Tran will file a motion seeking to "strip off" WAMU's second deed of trust on the Tran Residence.

Tran concedes that, because she filed her chapter 13 petition less than four years after receiving her discharge in the prior chapter 7 case, she is not eligible for a discharge herein. This is so by virtue of Bankruptcy Code § 1328(f)(1),[1] which provides, in relevant part as follows:

> (f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge--
> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter . . .

The Trustee contends that Tran may not strip off the second deed of trust in a chapter 13 case in which the debtor is ineligible for a discharge, and that there is no valid reason for this chapter 13 case.

B. <u>Background - Bennett</u>

The facts relevant to Bennett's chapter 13 case are undisputed. On August 31, 2009, Bennett filed a chapter 7 petition herein, and in due course, received her general discharge on December 17, 2009. On January 30, 2010, less than four years later, Bennett filed a

---

[1] All further section references herein are to the Bankruptcy Code, 11 U.S.C. § 101 <u>et</u>. <u>seq</u>.

Decision 3

chapter 13 petition herein.

In her bankruptcy schedules, Bennett listed general unsecured claims totaling $93,045 (excluding any unsecured claims that result from any lien strip-offs). At the date of the chapter 13 petition, Bennett owned a residence in Union City, California (the "Bennett Residence") that she valued at $431,000. The Bennett Residence was then subject to a first deed of trust in favor of Countrywide Loans ("Countrywide") to secure a debt in the sum of $589,630, and a second deed of trust in favor of Countrywide to secure a debt in the sum of $107,000. Thus, at the petition date, the first deed of trust was undersecured by $162,170 and the second deed of trust was wholly unsecured.

At that date, Bennett also scheduled an interest in three additional parcels of real property. Bennett's proposed chapter 13 plan provides for Bennett to surrender her interest in two of these parcels, but retain her residence and another parcel she refers to as the "children's home." The children' home is overencumbered to the extent of approximately $200,000, and produces no income.

Bennett scheduled a full or partial interest in five motor vehicles, one of which she proposes to surrender under the plan.

Under the plan, Bennett is to pay the Trustee $1,105 for four months and $1,500 for an additional 56 months. These payments will produce no return to any unsecured claimants.

Bennett concedes that, because she filed her chapter 13 petition less than four years after receiving her discharge in the prior chapter 7 case, she is not eligible for a discharge herein.

Decision 4

Section 1328(f)(1).

The Trustee contends that Bennett may not strip off the second deed of trust in a chapter 13 case in which the debtor is ineligible for a discharge, and on that basis, has objected to confirmation of Bennett's proposed chapter 13 plan.

### C. Lien Stripping in Chapter 13 Cases - Backdrop

Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. . .

Thus, a claim's status as a secured claim, and the amount of the secured claim, depends upon the value of the property to which the lien in question attaches, and the amount of any senior liens. To the extent that a lien does not attach to any value, it is void by operation of § 506(d), which provides: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . [several exceptions not relevant here follow]."

Section 506(d), however, is subject to several exceptions beyond those specified in that section. In Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773 (1992), the Supreme Court held, based on pre-Code practice, that a chapter 7 debtor may not avoid all or any portion of a lien on real property pursuant to Bankruptcy Code § 506(d), even though the lien is partially or wholly unsecured based on the value of the property and the amount of any senior

Decision 5

Case: 10-41032   Doc# 38   Filed: 06/25/10   Entered: 06/26/10 19:26:44   Page 5 of 17

liens. Id. at 417; see also In re Enewally, 368 F.3d 1165, 1169 (9th Cir. 2004).

Dewsnup, however, is inapplicable to chapter 13. Enewally, 368 F.3d at 1170.² But in chapter 13 cases, § 506(a) and (d) is qualified by § 1322(b)(2), which provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."

In Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106 (1993) the Supreme Court construed this language to prohibit a chapter 13 debtor from using § 506(a) and (d) to strip off the undersecured portion of a lien on the debtor's principal residence. The Supreme Court reasoned that partially secured lienholders are "holders of secured claims," and that the "rights of holders of secured claims" include the right to protection against lien modification afforded by § 1322(b)(2).

---

²In Enewally, the Ninth Circuit stated:

> The rationales advanced in the Dewsnup opinion for prohibiting lien stripping in Chapter 7 bankruptcies, however, have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12 and 13, where lien stripping is expressly and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.

368 F.3d at 1170, citing Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277, 291 n. 21 (5th Cir. 2000).

Decision                                6

But Nobelman is not the end of the story regarding lien stripping in chapter 13. In In re Zimmer, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit held that the rationale of Nobelman and § 1322(b)(2)'s protection against lien modification do not apply when a lien on a debtor's principal residence does not attach to any value, and thus, when a lienholder is not the "holder of a secured claim" by operation of § 506(a). For example, this would be the case with respect to a junior lien on a residence if the amount of a senior lien on a residence exceeds the value of the residence.

Thus, notwithstanding Nobelman and § 1322(b)(2), a chapter 13 debtor may utilize § 506(a) and (d) to strip off a lien on the debtor's principal residence, if the lien is completely unsecured based on the value of the residence and the amount of any senior liens.

D. Lien Stripping in No-discharge Chapter 13 Cases

The Trustee contends that chapter 13 debtors that are ineligible for a discharge, such as Tran and Bennett, may not utilize § 506(a) and (d) to strip off a lien on the debtor's principal residence, even if the lien is completely unsecured. There are a number of bankruptcy court decisions that so hold or so state. See In re Jarvis, 390 B.R. 600 (Bankr. C.D. Ill. 2008); In re Mendoza, 2010 WL 736834 (Bankr. D. Colo. 2010); In re Blosser, 2009 WL 1064455 (Bankr. E.D. Wis. 2009); In re Winitzky, No. 1:08-bankruptcy-19337-MT (Bankr. C.D. Cal. 2009). Several decisions, however, hold to the contrary. See Hart v. San Diego Credit Union, No. 09CV1017 JLS (POR) (S.D. Cal. 2010); In re Casey, 2010 WL

Decision 7

1766372 (Bankr. S.D. Cal. 2010).

This court agrees with the decisions holding that the Bankruptcy Code does not condition a chapter 13 debtor's right to strip off a wholly unsecured junior lien on the debtor's eligibility for a discharge. Rather, such right is conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all of the statutory requirements. At the same time, the court emphasizes that if a chapter 13 case is filed primarily to avoid a junior lien in an effort to skirt the Supreme Court's holding in Dewsnup, then such filing would not be in good faith, and such a case should be dismissed.

The starting point for statutory interpretation is the language of the statute. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989); Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990). In this respect, it is significant that § 109(a), (e), and (g), which sets forth the eligibility requirements for chapter 13, does not condition a debtor's eligibility for relief under chapter 13 on the debtor's eligibility for a discharge. Nor does § 109 preclude chapter 13 relief to a debtor that has recently received a discharge in chapter 7. Johnson v. Home State Bank, 501 U.S. 78, 11 S.Ct. 2150 (1991).

It is equally significant that, although § 1325(a) and (b) sets forth numerous requirements for confirmation of a chapter 13 plan, nothing in § 1325 conditions confirmation on the debtor being eligible for a discharge.

/////

Decision 8

Case: 10-41032  Doc# 38  Filed: 06/25/10  Entered: 06/26/10 19:26:44  Page 8 of 17

Moreover, nothing in § 506, § 1322, or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge.

Section 349(b)(1)(C) provides that a dismissal of a bankruptcy case "reinstates . . . any lien avoided under section 506(d) of this title." But a chapter 13 case in which a debtor completes a confirmed plan is "closed," not "dismissed" at the conclusion of the plan. Section 350(a);[3] Fed.R.Bankr. 5009. Similarly, § 1325(a)(5)(B)(i)(II) conditions any permanent lien modification of a secured claim, not on a discharge, but rather, on completion of a debtor's chapter 13 plan.[4]

Even so, there are, to date, at least four bankruptcy court cases that looked beyond the Bankruptcy Code's language to support a contrary view. The most often cited of these cases is <u>In re Jarvis</u>, 390 B.R. 600 (Bankr. C.D. Ill. 2008). In <u>Jarvis</u>, the court held that "[c]onsistent with its past practice, this Court also holds that the lien-avoiding effect of the confirmed plan, while established at confirmation, is contingent upon a discharge pursuant

---

[3] Section 350(a) provides: (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

[4] Section 1325(a)(5)(B)(i)(II) provides that "if the case under this chapter is dismissed or converted <u>without completion of the plan</u>, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law." (Emphasis added.)

Decision                                   9

to Section 1328." Apart from "past practice," the primary authorities cited by Jarvis were In re Lilly, 378 B.R. 232 (Bankr. C.D. Ill. 2007) and In re King, 290 B.R. 641 (Bankr. C.D. Ill. 2003), cases out of the same district.

Lilly, however, dealt with the rights of "holders of secured claims" and § 1325(a)(5)(B)(i)(I)(bb), which expressly conditions any permanent modification of the rights of a holder of a secured claim on either full payment of the underlying contractual debt or the debtor receiving a "discharge under section 1328."[5] The holder of a lien that is wholly unsecured, however, is not the holder of a secured claim. In re Zimmer, 313 F.3d at 1225-26. Thus, Jarvis's reliance on Lilly is misplaced. (The Jarvis court acknowledged that Lilly was distinguishable because the liens at issue therein, unlike the liens at issue in Jarvis, were secured claims under § 506(a). Jarvis, 390 B.R. at 605.)

/////

---

[5]Section 1325(a)(5)(B)(i)(I)(bb) provides, in relevant part:
(a) Except as provided in subsection (b), the court shall confirm a plan if--
(5) with respect to each allowed secured claim provided for by the plan--
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that--
(I) the holder of such claim retain the lien securing such claim until the earlier of--
(aa) the payment of the underlying debt determined under nonbankruptcy law; or
(bb) discharge under section 1328 . . .

Decision                              10

The other decision on which Jarvis is based is King. King however, upheld a chapter 13 debtor's right to strip off a wholly unsecured lien, King, 290 B.R. at 643, and the debtor therein was eligible for a discharge. King, 290 B.R. at 651. Thus, although the King court did state in its concluding paragraph that the lien avoiding effect of the plan was contingent upon the debtor receiving a discharge, this was purely dictum, and not at issue in the case.

The other cases cited by the Trustee are equally unpersuasive. The Blosser decision merely followed Jarvis, finding its reasoning "compelling." Mendoza relies on Jarvis and an unpublished decision, In re Winitzky, No. 1:08-bankruptcy-19337-MT (Bankr. C.D. Cal. 2009). Winitsky focused on the argument that stripping off a lien would deprive a lienholder of the lienholder's right of redemption (when there is one under nonbankruptcy law), and possibly other rights, when a case might end up being converted or dismissed prior to full plan performance. The Winitsky court also reasoned that "[i]f a court could strip a lien, with res judicata effect, without issuing a discharge, it would create a special 'lien discharge' where a debtor would still be liable for a debt but the creditor could not enforce that debt with the bargained for lien." Winitsky at 6.

Respectfully, this court declines to follow Winitzky and Mendoza. Permitting a chapter 13 debtor in a no-discharge case to strip off of a junior lien would not deprive the lienholder of its right of redemption during the course of the chapter 13 proceeding, if for example, the holder of a senior lien were to obtain relief

Case: 10-41032   Doc# 38   Filed: 06/25/10   Entered: 06/26/10 19:26:44   Page 11 of 17

from § 362(a)'s automatic stay.  This is so because, as stated above, the court can condition any permanent modification or stripping on the debtor's performance and completion of the debtor's chapter 13 plan.[6]  And if such a chapter 13 case is dismissed or converted to chapter 7 prior to full plan performance, the lien would remain intact, under § 349(b)(1)(C) in the case of a dismissal, or under Dewsnup in the case of a conversion to chapter 7.

Moreover, a chapter 13 debtor who has received a chapter 7 discharge and strips off a junior lien would not put the lienholder in the position feared by the Winitsky court where the debtor is "liable for the debt" as a personal liability but without the creditor having any accompanying lien rights.  This is so by virtue of § 524(a), under which such a debtor would have no personal liability for a debt discharged in an earlier chapter 7 case.  And this court declines to go along with the suggestion in Winitzky that such a discharged personal liability would somehow spring back to life when a debtor seeks to value the property at issue in a subsequent chapter 13 case.  Winitzky at 6 fn. 6.

/////

---

[6]This district has adopted Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases.  The Guidelines state that a judgment avoiding a lien is not to be entered prior to plan completion and entry of a discharge.  The Guidelines also state, however, that a discharge is a prerequisite to lien avoidance.  In this latter regard, the court believes the Guidelines are in error, and will recommend that they be amended.

Decision                                12

Thus, nothing in the Bankruptcy Code precludes a debtor that is not eligible for a discharge from filing a chapter 13 case, obtaining confirmation of a chapter 13 plan, and with the exception of the right to a discharge, from enjoying all of the rights of a chapter 13 debtor, including the right to strip off liens. This court finds the decisions to the contrary unpersuasive. Accordingly, this court holds that the Bankruptcy Code does not prohibit strip off of a wholly unsecured junior lien in a chapter 13 case, merely because the debtor is ineligible for a discharge under § 1328(f)(1).

E. <u>Objection to Confirmation - Tran</u>

It does not automatically follow from the foregoing that Tran is entitled to an order confirming her chapter 13 plan. Under § 1325(a)(5), the court may not confirm a chapter 13 plan absent a finding that the "plan has been proposed in good faith and not by any means forbidden by law." Under § 1307(c), the court may dismiss a chapter 13 case for "cause." "Cause," in turn, includes a filing in bad faith. <u>In re Eisen</u>, 14 F.3d 469, 470 (9th Cir. 1994); <u>In re Morimoto</u>, 171 B.R. 85, 86 (9th Cir. BAP 1994).

"Bad faith," as cause for dismissal pursuant to § 1307(c), depends on the totality of the circumstances, but certainly includes unfair manipulation of the Bankruptcy Code. <u>Eisen</u>, 14 F.3d at 470; <u>In re Warren</u>, 89 B.R. 87, 90-91 (9th Cir. BAP 1988). Cf. <u>In re Leavitt</u>, 171 F.3d 1219, 1224-25 (9th Cir. 1999) (regarding test for a dismissal "with prejudice" pursuant to Bankruptcy Code § 349(a) grounded on bad faith).

Here, the totality of the circumstances shows that Tran filed this chapter 13 case solely for purposes of avoiding the second deed of trust under circumstances where such avoidance was not available to her in chapter 7, and where no independent reason exists for her subsequent chapter 13 filing. See In re Warren, 89 B.R. at 95 (9th Cir. BAP 1988) (holding that the court should not confirm chapter 13 plans "that are in essence veiled chapter 7 cases"); In re Caldwell, 895 F.2d 1123, 1126 (6th Cir. 1990).

Under Tran's proposed chapter 13 plan, only a relatively small amount of arrearages on the debts secured by the first deed of trust are to be cured. No tax debts or other prepetition unsecured priority claims are to be paid; there are none.

It is true that a chapter 13 plan need not return a meaningful dividend to general unsecured claimants as a condition to confirmation. However, as the Ninth Circuit stated in In re Goeb, 675 F.2d 1386, 1391 (9th Cir. 1982), "Nominal-repayment is one piece of evidence that the debtor is unfairly manipulating chapter 13 and therefore acting in bad faith."

Moreover, Tran is solvent in a balance sheet sense, and her monthly expenses are less than her monthly income.

In short, the totality of the circumstances show that this case, as a chapter 13 case, is nothing other than an attempt by Tran to unfairly manipulate the Bankruptcy Code to skirt the Supreme Court's holding in Dewsnup, and thus, was not filed in good faith. It is also clear that this case is of absolutely no benefit to Tran's remaining creditors.

Decision                                    14

It follows that dismissal pursuant to § 1307(c) is in order, and is the remedy that would be in the best interest of Tran's creditors and the estate.[7]

F. Objection to Confirmation - Bennett

Although the Trustee has argued that Bennett's ineligibility for a discharge precludes her from stripping off any liens on her residence, the Trustee concedes that Bennett has a valid need for relief in chapter 13. Therefore, the Trustee has not requested dismissal.

Even so, there are facts present that raise substantial concerns on the part of the court as to whether Bennett's proposed plan in its present form can be confirmed. For example, the plan provides for nothing to be paid toward the $93,045 in unsecured debts that Bennett scheduled (which amount does not include any unsecured claims resulting from any proposed lien strips). Yet, the plan provides for Bennett to pay some $2,706 per month for current

---

[7] The case now before the court is distinguishable from In re Nelson, 343 B.R. 671 (9th Cir. BAP 2006). In Nelson, the "triggering event" of the dismissal at issue, unlike the dismissal here, was limited to the bankruptcy court's denial of confirmation. The BAP vacated the dismissal because the bankruptcy court did not afford the debtor the opportunity to amend the plan. Id. at 676. Morever, apart from such denial of confirmation, the bankruptcy court in Nelson made no findings of fact to support its conclusion that the debtor filed the case in bad faith, and had failed to assess the totality of the circumstances. Id. at 677. This court does not read Nelson as prohibiting dismissal when the totality of the circumstances, as here, show that the debtor filed a chapter 13 bankruptcy case in bad faith.

Decision                                              15

payments, plus an additional $37,900 for arrears, on the loan secured by the "children's residence," which, as mentioned above, is overencumbered and produces no income.

Moreover, it is unclear to the court what the debtor's justification is for making payments on at least one motor vehicle when she has interests in three other motor vehicles that she proposes to retain under the plan.

Therefore, the court will overrule the Trustee's objection to confirmation of Bennett's proposed plan, but declines to confirm the plan in its present form.

### G. Conclusion

For the foregoing reasons, the court will issue its orders: (a) dismissing Tran's chapter 13 case, and (b) overruling the Trustee's objection to Bennett's proposed plan grounded on the lien stripping issue, but denying confirmation of the proposed plan in its present form.

*END OF ORDER*

Decision 16

COURT SERVICE LIST

Drew Henwood, Esq.
The Law Offices of Drew Henwood
41 Sutter Street, Suite 621
San Francisco, CA 94104

Martha G. Bronitsky, Esq.
Chapter 13 Trustee
P.O. Box 5004
Hayward, CA 94540-5004

Lars T. Fuller, Esq.
The Fuller Law Firm
60 No. Keeble Ave.
San Jose, CA 95126

Decision     17

Case: 10-41032   Doc# 38   Filed: 06/25/10   Entered: 06/26/10 19:26:44   Page 17 of 17